UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CALVIN COOK,                                                                          10-6339-TC

                Plaintiff,

                v.                                         OPINION AND ORDER

UNION PACIFIC RAILROAD COMPANY, a
Delaware Corporation,

                Defendant.

COFFIN, Magistrate Judge:

      Plaintiff Calvin Cook brings this action against his employer defendant Union Pacific. Currently before me are the parties' cross motions for summary judgment. The parties have consented to have a Magistrate Judge decide this case under Rule 73 and 28 U.S.C. § 636(c). For the reasons set forth below, I grant Union Pacific's motion for judgement on Cook's Federal Employers' Liability Act Claim (Count I) and deny summary judgment on Cook's Oregon Walkways Statute (Count II) and Whistleblower (Count III) claims.

///

## Background

Cook has worked for Union Pacific for forty years as a locomotive engineer. On April 25, 2009, Union Pacific assigned Cook to deadhead from Klamath Falls, Oregon to his home terminal in Eugene, Oregon. "Deadhead" means to transport crew between two points. Thus, instead of operating a freight train back to Union Pacific's Eugene yard, Cook was a passenger on an Amtrak train bound for the Eugene Amtrak station. The Amtrak station is about two-and-a-half miles from the Union Pacific yard. Union Pacific provides deadheading employees a ride between the station and the yard, but it is generally the deadheading employee's responsibility to call Union Pacific to arrange for the ride. Cook had deadheaded between Eugene and Klamath Falls many times before. It was common for employees to wait up to an hour for a ride between the station and the yard and, as far as Cook knew, employees never walked from the station to the yard after deadheading.

When Cook reported to work in Klamath Falls, the supervisor on duty signed him on a computer terminal. At the computer terminal, Cook noticed that a ride for him between the Eugene Amtrak station and the yard had not been ordered, and he notified the supervisor of such. On the train ride to Eugene, Cook called twice to arrange a ride. His first call was not answered. Larry Shultz, a clerk at the Eugene yard, answered Cook's second call. Schultz told Cook he did not know if he could pick Cook up, but asked Cook to call back when he reached Eugene. In the meantime, Shultz called another Union Pacific Employee who told him she would arrange a ride for Cook.

When Cook arrived at the Amtrak station, no ride was waiting for him. Cook called Shultz several times, but Shultz did not answer. Cook had about three hours left in his shift, so he would have been paid for up to three hours of waiting at the station. After waiting about forty-five minutes, however, Cook decided to walk between the station and the yard. Cook decided to walk because it

Page 2 - OPINION AND ORDER

was a nice day, he thought that the walk would be the best thing for him and, in his estimation, the yard was not that far away. Cook was carrying luggage and safety gear that weighed about fifty pounds. He decided to walk along the Union Pacific right of way because that was the shortest, and in his opinion, the safest, route. Cook walked all the way to the Union Pacific yard. By the time he got to the yard, he realized he had injured his back during the walk.

Cook went to the yard office when he arrived. The supervisor on duty, Terry Brown, was not there. Under Union Pacific's rules, Cook had to notify a supervisor about his back injury before he "tied up"–a record keeping procedure required of engineers at the end of each shift. Cook went to his car, which was parked on company property, and called his union representative. He reported the injury to his representative and asked him to find the supervisor on duty, notify the supervisor of Cook's injury and "tie up" Cook. The representative notified Union Pacific of Cook's injury and "tie up" request.

Union Pacific subsequently charged Cook with several rule violations. After a two day hearing, Union Pacific found Cook in violation of Rule 1.6, which prohibits employees from being careless of the safety of themselves or others or being negligent and fired him. Cook appealed his dismissal to the Public Law Board in July 2009, as allowed by his Collective Bargaining Agreement and the Railroad Labor Act. About two months later, in September 2009, Cook filed a whistleblower complaint with the Occupational Health and Safety Administration (OHSA) alleging that his injury was a contributing factor in his termination. A year later, Cook opted out of the OHSA administrative process and filed this lawsuit. While this suit was pending, on May 11, 2011, the Public Law Board issued a decision reinstating Cook without back pay. The Board found the hearing on the disciplinary charges was procedurally sound, that Cook had left his job without authority, and

Page 3 - OPINION AND ORDER

that he did not have authority to walk from the Amtrak station to the yard. Despite finding that Union Pacific had proved that Cook had committed violations warranting dismissal, the Board ordered that, based on his years of service, Cook should be reinstated without back pay.

## Standard

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. Id.; see also, Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000). In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. On the other hand, if, after the court has drawn all

Page 4 - OPINION AND ORDER

reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. Id.

## Discussion

Union Pacific initially moved for summary judgment on all of Cook's claims. Subsequently, it withdrew its motion with regard to Count III. Cook filed briefs opposing summary judgment on all his claims and seeking judgment in his favor on Counts I and III of his complaint.

At the onset, I consider Union Pacific's argument that Cook failed to properly raise a cross motion for summary judgment on Claims I and III. Union Pacific notes that Cook's opposition briefing is styled as an opposition and cross motion for summary judgment and that such does not comply with this district's Local Rules. Union Pacific is correct that Cook's cross motions do not comply with the Local Rules. Union Pacific has not, however, been prejudiced by Cook's failures. Thus, I find that it is in the interest of justice to allow his cross motions to proceed. LR 1-4.

### A. Federal Employers' Liability Act

Cook argues that Union Pacific violated the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, et seq. through various negligent acts. Union Pacific argues that it is entitled to summary judgment because: Cook was not injured in the course of his employment; Cook was injured solely because of his own negligence; and Union Pacific was not negligent because Cook's injury was not foreseeable.

"Liability under FELA is limited in these key respects: Railroads are liable only to their employees, and only for injuries sustained in the course of employment." CSX Transp. Inc. v. McBride, __U.S.__, 131 S.Ct. 2630, 2636 (2011). An employee acts in the course of his employment when: "(1) the conduct occurred substantially within the time and space limits

Page 5 - OPINION AND ORDER

authorized by the employment; (2) the employee was motivated, at least in part, by a purpose to serve the employer; and (3) the act was of a kind that the employee was hired to perform." Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n, 298 F.3d 768, 776 (9th Cir. 2002) (citing Restatement (Second) Agency § 219 (1958)). The FELA does not allow recovery by an employee when the employee's own negligence was the sole cause of injury. Illinois Central R. Co. v. Skaggs, 240 U.S. 66, 68 (1916).

### 1. Scope and Course of Employment

It is undisputed that Cook was still on duty when he was injured. Viewing the facts in a light most favorable to Cook, triable issues exist regarding whether his actions were within the "space limits" of his employment, motivated, at least in part, by a desire to serve Union Pacific and of a kind he was hired to perform. Oki, 298 F.3d at 776; see also, Chesterman v. Barmon, 82 Or. App. 1, 5 (1986) (stating whether employee was acting in the scope of employment at any given time is generally a question for the jury, except in cases where only one reasonable conclusion could be drawn from the facts).

Cook's assignment was to travel from Klamath Falls to the Union Pacific yard in Eugene. Even assuming that the general practice was for deadheading employees to wait for a ride at the Amtrak station, that does not mean that a finder of fact could not conclude that Cook was acting in the "space limits" of his employment when he was injured. There was nothing on Cook's call sheet that directed him to wait, and Union Pacific did not have any rule against walking to the yard on the railroad right of way. Despite making numerous attempts, Cook had not been able to arrange a ride. When he had been walking, he had waited over forty-five minutes and no ride was coming. These circumstances, taken together, could lead a reasonable jury to conclude that, when Cook was injured,

Page 6 - OPINION AND ORDER

he was in the space limits of his employment because he was, as directed, traveling to the Union Pacific yard. Osterman v. Osgood, 123 Or. App. 30, 33 (1993).

Union Pacific's contention that Cook's testimony establishes that his decision to walk was motivated by a personal desire instead of a desire to serve Union Pacific is not persuasive. Cook testified that he decided to walk between the station and the yard because it was a nice day and it would be the best thing for him. While these things might have been a factor, a jury could find that at least part of the motivating purpose for Cook's walk along the railroad was to travel to the Pacific Union yard–which was part of his job assignment. Barry v. Oregon Trunk Ry, 197 Or. 246, 258 (1953) (noting that the "real test is: was the employee at the time doing any act in furtherance of the company's business.") Finally, I cannot find as a matter of law that Cook's actions were not a "necessary incident" of his days work. His assignment was to travel from Klamath Falls to the Union Pacific yard. Contrary to Union Pacific's assertions, there was never any secondary duty assignment to wait at the Amtrak station for a pick up. Instead, there was an option for Cook to wait for a ride. Given, however, that he had made several fruitless attempt to arrange for transportation (and in fact none had been arranged when he decided to walk), a fact finder could determine that walking to the Union Pacific yard was a necessary part of his duty to travel to the yard. Runyan v. Pickerd, 86 Or. App. 542 (1987).

    2.    **Cause of Injury**

An issue of fact exists regarding whether Union Pacific caused or contributed to Cook's injury. Under FELA the "quantum of evidence sufficient to present a jury question of causation is less than it is in a common law tort action." Claar v. Burlington N. R. Co., 29 F.3d 499, 503 (9th Cir. 1994). Summary judgment on an FELA claim is not appropriate if the evidence justifies "with

Page 7 - OPINION AND ORDER

reason, the conclusion that employer negligence played any part, even the slightest, in producing the injury." Rogers v. Missouri Pacific R.R. Co., 352 U.S. 500, 507 (1957).

A factfinder could conclude that Union Pacific's negligence played a part in Cook's injury. Christensen v. Georgia-Pacific Corp., 279 F.3d 807, 813-14 (9th Cir. 2002) ("Summary judgment is rarely granted in negligence cases because the issue of whether the defendant acted reasonably is ordinarily a question for the trier of fact.") The record establishes that Cook's work assignment was to deadhead from Klamath Falls to the Eugene Union Pacific yard. Despite several attempts, Cook was unable to arrange a ride from Union Pacific between the Amtrak station and the yard.

Union Pacific argues no reasonable factfinder could conclude that it contributed to Cook's injury because Cook made the decision to walk and because Cook deciding to walk over two miles on the railroad right of way carrying over fifty pounds of gear was not a decision a reasonably prudent person would make. Gallick v. Baltimore & O.R. Co., 372 U.S. 108, 117, 118 (1963) ("[R]easonable foreseeability of harm is an essential element of Federal Employers' Liability Act negligence" and "defendant's duty is measured by what a reasonably prudent person would anticipate as resulting from a particular condition.") The record here, however, establishes that there is a dispute of fact regarding whether Union Pacific acted unreasonably in failing to order a ride for Cook, despite his numerous attempts to procure one. For example, when he was two hours out from the Amtrak station, Cook spoke with Larry Shultz, the yard clerk. Shultz told Cook that he was all alone at the yard and could not pick Cook up but that Cook should call back when he reached Eugene. Upon reaching Eugene, Cook tried to call Shultz several times, but Shultz did not answer. I cannot find as a matter of law that a reasonably prudent employee, when faced with these circumstances, would not have decided to try to walk between the station and the yard. Especially

Page 8 - OPINION AND ORDER

if that person believed–as Cook did, that the distance was relatively short. For these reasons, the issue of whether Union Pacific's negligence played any part in Cook's injury cannot be decided on summary judgment. Christensen, 279 F.3d at 813-14.

### 3. Cook's Motion for Summary Judgment on his FELA claim

Cook argues that he is entitled to summary judgment on this claim because Union Pacific has admitted that it breached its duty to provide him with a ride between the Amtrak station and yard, thus placing him in a dangerous situation. For many of the same reasons stated above, a jury must determine whether Union Pacific's negligence caused Cook's injuries in whole or in part. On one hand, a jury could find that Cook's injuries stemmed from Union Pacific's failure to provide a ride. On the other hand, however, a jury might weigh the evidence and decide that the cause of Cook's injury was his own decision to walk to the yard instead of to continue waiting at the station. Thus, this issue is not appropriate for decision on summary judgment.

### B. Oregon Walkway Statutes

Union Pacific argues that Cook's claim based on Oregon's Walkway Statutes, OAR § 741-320, is preempted by the Interstate Commerce Commission Termination Act of 1966 (ICCTA) and by the Federal Rail Safety Act (FRSA), 49 U.S.C. §§ 20101-21311. Cook argues that the gravamen of his claim is that Union Pacific allowed unsafe conditions to exist in its right of way. Cook argues that the ICCTA's ballast and slope regulations do not address, cover or substantially subsume the issue of ballast material in train track right of ways. According to Cook, the federal regulations cover track safety, not employee walkways or walkway conditions.

The ICCTA, which Union Pacific claims precludes Cook's Oregon Walkway Statutes claim, is part of a broader network of federal statutes regulating railroads. Congress also enacted the FRSA

Page 9 - OPINION AND ORDER

to promote federal regulation of railroad safety. The FRSA has its own preemption provision and allows states to pass laws regarding railroad safety where the federal government has not yet acted. 49 U.S.C. § 20106; CSX Transp. v. Easterwood, 507 U.S. 658 (1993) (discussing test for state-law preemption by FRSA). Almost all courts which have considered the exact issue presented here have concluded that "the FRSA is silent on the question of walkways. The regulations are directed toward created a safe roadbed for trains, not a safe walkway for railroad employees...." Grimes v. Norfolk S. Ry. Co., 116 F.Supp.2d 995, 1002-03 (N.D. Ind. 2000); see also, S. Pac. Transp. Co. v. Pub. Utils. Comm'n, 647 F.Supp. 1220 (N.D. Cal. 1986), af'd per curium, 820 F.2d 1111 (9th Cir. 1987).

The ICCTA focuses mainly on state economic regulation of railway activities, including attempts to "manage or govern rail transportation." Elam v. Kansas City Southern Ry. Co., 635 F.3d 796, 805-07 (5th Cir. 2011). Union Pacific relies on several cases, including City of Auburn v. United States Government, to support its assertion that ICCTA preempts this claim. Id. 154 F.3d 1025 (9th Cir. 1998). Union Pacific's reliance, however, is misplaced. For example, in City of Auburn, the Ninth Circuit considered whether state and local governments in Washington had the authority to review the environmental impact of proposed railway operations on the Stampede Pass line. The Ninth Circuit concluded that the ICCTA preempted state and local environmental laws which amounted to imposing "economic" regulations on railroads. Id. at 1031-32 (stating "For if local authorities have the ability to impose 'environmental' permitting regulations on the railroad, such power will in fact amount to 'economic regulation' if the carrier is prevented from constructing, acquiring, operating, abandoning, or discontinuing a line.") Here, however, Oregon's statutes regulate the size of the ballast and the slope of the right of way along the Union Pacific tracks; laws which have a remote or incidental effect on rail transportation. See e.g, Ass'n of Am. R.R. v. S.

Page 10 - OPINION AND ORDER

Coast Air Quality Mgmt Dist., 622 F.3d 1094, 1097-98 (9th Cir. 2010) (stating that generally the ICCTA does not preempt state laws if they are of general applicability and do not interfere with interstate commerce); Burlington N. & Sante Fe Ry Co. v. Dept. of Transp., 227 Or. App. 468, 472-73 (noting that the ICCTA does "not usurp the right of state and local entities to impose appropriate public health and safety regulation on interstate railroads so long as those regulations do not interfere with or unreasonably burden railroading.")

Accordingly, I find that Cook's Oregon Walkway Statutes claim is not preempted by the FRSA or the ICCTA.

### C.     Violation of 49 U.S.C. § 20109

Union Pacific withdrew its motion for summary judgment on Cook's whistleblower complaint on November 7, 2010. (#33). Accordingly, I only consider Cook's argument that he is entitled to summary judgment on this claim because Union Pacific has admitted to a violation of the statute.

49 U.S.C. § 20109 was specifically designed to protect railroad employees from discrimination from their employer when they report injuries. Cook argues that Union Pacific has admitted that it violated the statute because its employee Terry Brown ( who was Cook's supervisor) testified that he would not have charged and found Cook in violation of Rule 1.6 if Cook had not been injured. A review of the transcript of Brown's deposition reveals that Brown stated:

| | |
|---|---|
| Q | ...If Mr. Cook--so, we were talking about this careless of the safety of himself and others |
| A | Uh-huh |
| Q | And so if Mr. Cook hadn't been injured, would you have still been--found him in violation of this rule? |
| A | I don't know |
| Q | Sitting here today, I mean, again do you know [sic] all the facts and |

Page 11 - OPINION AND ORDER

>       circumstances that you know. He said he was walking and he was injured and
>       you think he violated this rule. I'm asking you if he hadn't been injured,
>       would he have been careless for the safety of himself?
> A     I would say no if he were not injured.

(#22-2 at *p. 21:4-25). Brown has subsequently filed a declaration in opposition to Cook's summary judgment motion stating that he "cannot say what [he] would have done if Mr. Cook had not been injured." (#29 at ¶ 13). In short, Cook argues he was charged with a rule violation only because he was injured while Union Pacific argues that Brown does not know if Cook would have been charged if he had not been injured. Because the disputed facts and inferences could support a verdict for either party, I cannot say as a matter of law that Cook is entitled to judgment on this claim.

## Conclusion

For the reasons stated above, I deny the parties' cross motions for summary judgment on Count I of Cook's complaint, deny Union Pacific's motion for summary judgment on Count II, and deny Cook's motion for summary judgment on Count III.

This case shall proceed according to the schedule set on February 15, 2011: the pretrial Conference is set for January 30, 2012 at 10:00 AM in Eugene, Oregon; jury trial is set for February 13, 2011 at 9:00 AM in Eugene, Oregon. (#13).

IT IS SO ORDERED

DATED this 18th day of November 2011.

THOMAS M. COFFIN
United States Magistrate Judge